

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KIMBERLY FUTRELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:15-CV-0333 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION TO REVERSE
## THE DECISION OF THE COMMISSIONER AND REMAND

Plaintiff KIMBERLY FUTRELL brings this cause of action pursuant to 42 U.S.C.

§ 405(g) seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting

Commissioner of Social Security (Commissioner), denying plaintiff's applications for Disability

Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A).

For the reasons hereinafter expressed, the undersigned United States Magistrate Judge

recommends the Commissioner's decision finding plaintiff not disabled and not entitled to

benefits be reversed and the case be remanded for further administrative proceedings.

I.
PROCEEDINGS

On June 8, 2012, plaintiff Kimberly Futrell protectively filed her application for DIB due

to blood clots, residual nerve damage from complications of breast cancer, underactive thyroid

and asthma. (Administrative Transcript (Tr.) 12, 62, 64, 146, 157). The Commissioner denied

benefits initially on October 10, 2012 and upon reconsideration on January 25, 2013. (Tr. 62-63, 64-65). Upon plaintiff's request, a video hearing was held before an Administrative Law Judge (ALJ) on April 17, 2014. (Tr. 28-61). It was determined at the hearing that plaintiff's actual disability onset date was May 23, 2012 instead of January 1, 2006. (Tr. 32). On the date of the hearing, plaintiff was almost 46 years old, had a high school education, twenty-two hours of college and two years of management training for a supermarket chain. (Tr. 37, 64). She had past relevant work as a school library aide and merchandiser, both performed at the light, semiskilled level, and as a retail manager, performed at the light, skilled level. (Tr. 20). On June 18, 2014, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 9). Following plaintiff's unsuccessful administrative appeal of the ALJ's decision, plaintiff sought federal judicial review.

In reaching his decision, the ALJ followed the five-step sequential process in 20 C.F.R. §§ 404.1520(a) and 416.920(a). The claimant has the initial burden of establishing a disability in the first four steps in the analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). At Step One, the ALJ determined plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14).[1] At Step Two, the ALJ found plaintiff's left brachial plexus neuropathy, left lower extremity deep vein thrombosis (DVT)[2] and obesity were severe impairments but found her medically determinable mental impairments of anxiety, panic attacks and depression to be non-severe. (Tr. 14-15). At Step Three, the ALJ

---

[1] In his findings the ALJ references the original onset date of June 1, 2006 which was changed at the hearing to May 23, 2012. (Tr. 14, 32).

[2] The Mayo Clinic defines deep vein thrombosis (DVT) as the occurrence of a blood clot, or thrombus, which forms in one or more of the deep veins in a person's body, usually in the legs. www.http://www.mayoclinic.org/diseases-conditions/deep-vein-thrombosis/basics/definition/con-20031922 (2017). The Court understands plaintiff's application allegations of "blood clots" to mean DVT.

concluded plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).  At Step Four, the ALJ concluded plaintiff was capable of performing her past relevant work .  (Tr. 20).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion.  It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  To determine whether substantial evidence of disability exists, the following elements must be weighed:  (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial

evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

III.

ISSUES

The ALJ found plaintiff not disabled at Step Four of the five-step sequential analysis. Consequently, the court's review is limited to whether there was substantial evidence in the record, taken as a whole, to support the finding that plaintiff had the ability to perform her past relevant work, and whether proper legal standards were applied in making this determination. Plaintiff presents the following issues for review:

1. The ALJ erred in assessing the severity of plaintiff's impairments at Step Two;

2. The RFC determination is unsupported by substantial evidence;

3. The credibility determination was not supported by substantial evidence; and

4. The Step Four determination is not supported by substantial evidence.

(Dkt. at 4).

IV.

MERITS

*A. Plaintiff's Impairments at Step Two*

Plaintiff alleges the ALJ erred when he failed to find her medically determinable mental impairments of anxiety, panic attacks and depression to be severe and determined plaintiff had no limitations in activities of daily living, social functioning or concentration, persistence or pace.

(Tr. 18 at 15). Specifically, plaintiff argues the ALJ afforded no weight to the opinion of plaintiff's treating psychologist, Dr. Steven Schneider. (Dkt. 18 at 15). Plaintiff also argues the ALJ failed to consider her testimony and the treatment notes in the record to support her history of anxiety and depression. (*Id.*).

The record in this case contains a one-page letter from Dr. Steven Schneider to plaintiff's counsel dated April 11, 2014 which states,

> Ms. Futrell has been seen in this office for two visits - 2/24/14 & 3/31/14.
>
> Ms. Futrell has significant medical/health problems that have been and continue to be debilitating. Additionally, she experiences a major depression superimposed on a chronic dysthymia that complicates her relationships, her ability to interact in public, her family function, and her overall quality of life.
>
> She will be seen on a regular basis and it is anticipated that her condition(s) will be chronic and will exhibit only gradual amelioration.

(Tr. 1087). The ALJ took note of this letter but gave it no weight reasoning the doctor had only seen plaintiff twice resulting in a very short treatment period, because no treatment records were provided, and because the doctor's opinion was inconsistent with plaintiff's, "complete lack of any mental health treatment until very recently." (Tr. 16). Defendant argues the ALJ did not err because a doctor whose treatment is characterized as only intermittent and infrequent lacks the longitudinal and detailed perspective of an impairment to be considered a treating physician and as such the ALJ is not required to give the opinion controlling weight. *See* 20 C.F.R. § 404.1527(d)(2), *Hernandez v. Heckler,* 704 F.2d 857, 860–61 (5th Cir.1983)(twice in 17-month period does not qualify as treating physician such that the ALJ must accord it greater weight than other physicians), *McCoy v. Astrue*, 2010 WL 5812954, at *5 (N.D. Tex. Dec. 16, 2010)(two visits, with records three months apart, does not qualify as a treating physician-patient

relationship).

Defendant's response focuses on whether the ALJ was required to treat Dr. Schneider's opinion as that of a treating provider and give it controlling weight. While that does appear to be part of plaintiff's claim, plaintiff's position is not limited to that issue alone. Plaintiff also argues the failure of the ALJ to find the mental impairment "severe" at Step Two was error. Stated differently, the plaintiff's argument is that the mental impairment was severe per *Stone v. Heckler* and that the ALJ erred, whether Dr. Schneider was a treating physician or not, when he rejected Dr. Schneider's diagnosis even as to whether plaintiff's depression/anxiety was severe. Further, even if the ALJ was within his discretion in considering the lack of treatment records, there is an issue whether the ALJ committed error in completely rejecting Dr. Schneider's diagnosis because he had only seen plaintiff twice or because she hadn't sought treatment before.

Plaintiff argues the fact she was only seen twice by Dr. Schneider is not fatal because she has a history of depression as well as panic and anxiety attacks. Plaintiff argues she was prescribed Paxil for her depression. She cites to her application medications list, submitted by her to the Commissioner on April 17, 2014. However, the list only shows plaintiff's hand-written assertion that she was first prescribed Paxil for her depression in March of 2014. (Dkt. 18 at 15 citing Tr. 203). The Court has not found a March 2014 medical record or other record containing a prescription for Paxil. Consequently the evidence is in conflict and the ALJ could have found substantiation for her complaints of anxiety or could have found there was insufficient evidence.

Plaintiff also cites to the Disability Report - Adult, dated June 12, 2012, in support of her mental health/Paxil prescription argument however, a review of the specific record cited (Tr.

149) shows that plaintiff stated as of that date in 2012 she had not seen a doctor or other health care professional or received treatment at a hospital or clinic for any mental condition. A medical record dated February 20, 2012 from the Genesis Clinic contains an assessment for depression but the plan portion of the record notes that plaintiff refused depression medication. (Tr. 344). On July 5, 2012 at the same clinic a note referencing depression states, "she does not want to take any meds for depression at this time." (Tr. 358). Failure to take medication can be considered by the ALJ as an indication of nondisability. *See Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir.1990). The Court is of the opinion the failure or refusal to take mediation does not mandate a finding that a mental condition is nondisabling. There may be any one of a number of reasons not to take and/or limit medication such as cost, side effects or the stigma of being on antidepressants. The fact that the ALJ chose to find the refusal to take medication as indicative of the impairment not being severe was within his discretion and absent additional factors, would not be reversible. This Court may not second guess the ALJ or substitute its judgment for the administrative judgment.

A review of the record does not support plaintiff's argument that the ALJ failed to consider her testimony and the treatment notes in the record regarding her history of anxiety and depression. Notes dating back to 2011 reference plaintiff's feelings of anxiety and stress but note she has no history of depression. (Tr. 271). Notes dated April 5, 2012 state plaintiff was constantly worried about the recurrence of cancer (Tr. 278) but that while she was sad and depressed, she was less anxious than her previous visit. (Tr. 280). In fact, with regard to depression and anxiety the record noted, "symptoms improved significantly." (Tr. 281). A visit to the Amarillo Diagnostic Clinic on January 10, 2014 shows that while plaintiff talked about

anxiousness and stresses of the past she stated, "it's not as bad now." (Tr. 454). Of particular significance is that plaintiff suffered from an "acute anxiety attack" on February 4, 2014 and was seen at the Pampa Regional Medical Center. (Tr. 1080). The history of present illness section of the record the notes state, "No previous episodes like this before. No history of depression, not on any psych meds. First time that she ever had a mental breakdown like this." (*Id.* emphasis added). In his opinion the ALJ found plaintiff's allegations of panic and anxiety attacks not credible specifically noting plaintiff testified she experienced four panic attacks while working at a school. (Tr. 49). The ALJ reiterated there were no treatment notes in the medical records for this condition and it was not mentioned in the record until very recently and he found these inconsistencies to significantly reduce plaintiff's credibility. (Tr. 15).

Plaintiff's failure to admit to the four panic attacks while at work could be explained. Perhaps she was embarrassed by them or thought if she reported them it could affect her employment. Plaintiff's failure to report a history of panic attacks to her medical care giver when she presented to the emergency room with that condition however, is not easily explained and does impact her credibility. It provides support for the ALJ finding that this was not an ongoing as opposed to a new or intermittent medical condition.

The ALJ was within his discretion and did not reversibly err in interpreting the evidence of record and finding that it did not support plaintiff's claim that her mental impairments caused limitations in activities of daily living, social functioning or concentration, persistence or pace. The ALJ discussed each of these areas in his decision and determined claimant's medically determinable mental impairments caused no limitation to her activities of daily living, social functioning or in the area of concentration, persistence and pace. (Tr. 15, 19).

It is important to the overall analysis of the case that the ALJ, in commenting on plaintiff's areas of daily living, referenced plaintiff's description of her limitations but noted these were related to her physical pain. (Tr. 15). This determination not only has an evidentiary basis, it is not inconsistent with Dr. Schneider's findings. Dr. Schneider noted plaintiff suffered from debilitating problems, but referenced significant medical health problems as the cause. It was only after referencing plaintiff's health problems that Dr. Schneider found, "Additionally, she experiences a major depression..." (Tr. 1087 emphasis added). As to social functioning, the ALJ referenced plaintiff's ability to shop, online, by phone and in stores, and her ability to perform church activities and speaking engagements and noted that while these were more restricted than in the past, she still demonstrated less than a mild limitation. (Tr. 15-16, 19). As to concentration, persistence and pace, the ALJ noted plaintiff's testimony that she has memory and concentration problems but found her overall testimony to be descriptive and articulate and noted her ability to perform speaking engagements for her church. (Tr. 15). Finally, the ALJ noted no episodes of decompensation for an extended period of time. (Tr. 15-16). Although defendant argues that plaintiff did not include any mental impairment in her application for benefits the evidence of record shows this impairment was urged by plaintiff at the hearing and was identified and discussed by the ALJ, so the issue is properly before the Court.

The Court finds, based on the record as a whole, that even if the ALJ erred at Step Two regarding plaintiff's claims of depression and/or anxiety it was harmless. The Court notes, however, that plaintiff's initial anxiety was understandably related to her fear of her cancer coming back. Later, after her 2012 onset date, plaintiff's episodes of depression and anxiety are not well documented. It is possible, however, that plaintiff's anxiety is not an issue in a less

stressful home environment but manifests primarily in a work environment or some other higher stress situation.

### B. The ALJ's Residual Functional Capacity (RFC) Determination

Plaintiff challenges the ALJ's RFC determination that she is capable of performing a full range of light-level work arguing it is not supported by substantial evidence. The ALJ determined plaintiff had the following RFC:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and can stand or walk a combined total of six hours out of an eight-hour day. The claimant is occasionally able to reach in all directions with her left upper extremity. She can also frequently handle, finger and feel with her left upper extremity. She cannot climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs. She cannot crawl.

(Tr. 16-17). Plaintiff's argument is two-fold. Plaintiff first argues the ALJ failed to properly weigh the opinion evidence of record and failed to fully and fairly develop the record and second, plaintiff says the ALJ failed to reconcile the RFC determination with plaintiff's limitations in her left upper and lower extremities. (Dkt. 18 at 18, 21).

Plaintiff again argues there was an inconsistency or insufficiency in the record with regard to plaintiff's mental impairments and that the ALJ should have re-contacted Dr. Schneider or requested a consultative examination. Plaintiff argues the ALJ's failure to do either should have resulted in the ALJ affording controlling weight to Dr. Schneider's diagnosis and opinion. Dr. Schneider's opinion has been addressed previously and will not be further addressed here other than to say the ALJ did not reversibly err when he found Dr. Schneider's opinion was not supported by the medical evidence of record.

Plaintiff also contends the ALJ failed to reconcile the ALJ's RFC determination with

plaintiff's limitations in her left upper and lower extremities. Specifically, plaintiff argues the ALJ afforded little weight to the medical source statement (MSS) of Nurse Feerer, at the Genesis Clinic, co-signed by Dr. Gretchen Adams, but afforded moderate weight to the state agency medical consultants. (Dkt. 18 at 20).

The MSS referenced by the parties appears to be a document entitled Physical RFC Assessment signed by Nurse Feerer on April 23, 2014. (Tr. 1088-1104). Dr. Gretchen Adams also signed the last page of the assessment. (Tr. 1104). That RFC assessed plaintiff with less than a sedentary capacity thereby precluding any work in the national economy (Tr. 19, 1088-1104). The ALJ first found the assessment to be inconsistent with the medical evidence of record, then further found the assessment did not reflect sufficient documentation or medical findings and lastly found the nurse was not an acceptable medical source. (Tr. 19). Plaintiff takes specific exception to the ALJ's determination that most of Nurse Feerer's records show mild or no swelling with normal strength in the upper and lower extremities, the ALJ's reference to Nurse Feerer's treatment notes of August 15, 2012 indicating plaintiff could return to work with frequent ambulation, and Nurse Feerer's classification as a non-acceptable medical source.

Plaintiff argues the medical records support a finding that plaintiff suffered from *chronic* swelling in the left arm and leg, tenderness in the left leg from groin to foot and weakness in the left hand and arm. (Dkt. 18 at 20). The medical record cited by plaintiff from January 11, 2013 states, "left leg less swollen with tenderness from groin to foot, but worse from behind left knee to left groin. Chronic swelling left arm and left leg. Weakness left hand and arm strength." (Tr. 574). The next record plaintiff cites was from November 20, 2012 and says, "...left leg less swollen with tenderness from groin to foot...motor strength normal upper and lower

extremities..." (Tr. 576). The February 11, 2013 record cited by plaintiff contains the identical

entry from January 11, 2013 (Tr. 612) and the record cited from October 25, 2012 says, "...left

leg swollen with tenderness. Foot cool to touch..." (Tr. 625). However, that same record

contains an entry stating, "...motor strength normal upper and lower extremities..." (Tr. 626).

Defendant counters and cites multiple entries showing mild or no swelling as well as

normal strength in the upper and lower extremities. (Dkt. 20 at 12 citing Tr. 569, 576, 580, 586,

589, 594, 597, 600, 605, 609, 627, 630, 633, 638-640, 642, 644, 700). These records date from

June 1, 2012 (Tr. 642)(tenderness left arm and leg, normal muscle strength upper and lower

extremities, "States she is feeling much better. She is on anticoagulation therapy...") to February

17, 2014 (Tr. 589)(no swelling). The medical record dated October 25, 2012 states, "...patient

here for [follow up] of swelling left leg which has improved. States vascular surgeon Dr.

Langley in Amarillo told her previous left leg DVT had resolved." (Tr. 625). On March 14,

2013 the record notes the left leg was previously swollen and painful but had improved after

resting the past few days and upon examination, while there were complaints of pain in the left

leg with weight bearing, there was no numbness in the toes and the "swelling [had] resolved."

(Tr. 594). There are, as plaintiff argues, references to chronic swelling but, the record also

contains multiple entries finding little or no swelling.

The ALJ reviewed the medical records in this case, heard plaintiff's testimony at the

hearing, and reviewed the MSS/RFC completed by Nurse Feerer. The ALJ found the assessment

incompatible with all of the medical evidence including the same nurse's August 15, 2012

opinion that plaintiff could return to work. (Tr. 633).

Plaintiff also complains of the ALJ's characterization of Nurse Feerer as an unacceptable

medical source and notes that at least on two occasions, March 21, 2013 and April 18, 2013, Dr. Adams examined plaintiff. (Tr. 573, 591-593)("trace swelling...advise [patient] can change diet to include leafy green vegetables and we could adjust coumadin dosing"). Plaintiff's contention the ALJ should have re-contacted Dr. Adams for clarification and/or ordered a physical consultative examination presents an arguable issue. If Dr. Adams's opinion was the same as the nurse's or if the nurse completed the medical summary at Dr. Adams's direction then a different case is presented. The ALJ stated the nurse was not an acceptable medical source but did so in the context of referencing the MSS/RFC opinion completed by the nurse and afforded this assessment little weight for this reason. Without knowing the input and/or control Dr. Adams had or did not have in the assessment the ALJ's finding is based upon incomplete information. Further, if the nurse was an unacceptable medical source the ALJ offers no explanation why he accepted her August 15, 2012 comment that plaintiff could return to work. (Tr. 634). If she is an unacceptable medical source and her findings which are favorable to plaintiff are not accepted then her findings which are against plaintiff should also be rejected.

Plaintiff next argues the ALJ erred when he noted the State agency reviewing physician opinions failed to address plaintiff's left side reaching and manipulative limitations, thus giving their opinion only moderate weight, but then discounted Nurse Feerer's MSS/RFC as inconsistent with the state agency assessment he discounted. (Dkt. 18 at 21). The State agency physician opined that plaintiff could perform a full range of light work and was limited only from reaching in all directions. (Tr. 19, 353). No other limitations were stated including no limitations on stooping, kneeling, crouching or crawling. (Tr. 352). The ALJ found the assessment failed to define reaching limitations on the left and failed to address manipulative

limitations of the left hand so he only gave it moderate weight. (Tr. 19). Under the Social

Security regulations, an ALJ is required to consider State Agency physician opinions because

these State Agency physicians are experts in Social Security disability evaluation. (*See* 20 C.F.R.

§§ 404.1527(f)(2)(i), 416.927(f)(2)(i), Tr. 24-25). If in fact the ALJ rejected the limitations

which Nurse Feerer set out because those limitations were contradicted by the State Agency

physicians whose opinions were found at least in part to be not credible, the plaintiff has a

legitimate point. What the ALJ appears to have done was to reject both medical opinions and

resolve the issue in between. His decision to reject, in part, the state agency RFC means the ALJ

found record evidence to support a lesser RFC. The evidence would necessarily have to have

been from Nurse Feerer, from plaintiff herself or from some other acceptable source. Whatever

the source was of the ALJ's finding that plaintiff was more limited than the State Agency

physicians had found, the ALJ must have considered that source to be credible.

### C.  The ALJ's Credibility Assessment

Plaintiff next claims the ALJ erred in his credibility assessment contending it was not

supported by substantial evidence. (Dkt. 18 at 24). In reaching his credibility assessment the

ALJ summarized plaintiff's hearing testimony as follows:

> [S]he lives in a house with her husband and daughter, who come (sic) back and
> forth from college. Her husband works as a minister. The claimant was
> unemployed for 12 weeks in August of 2012. She has worked part-time since her
> alleged onset date.
>
> She stated her left leg stays swollen 99 percent of the time from the ankle all the
> way up. She wears compression stockings most of the time. She states she can
> walk 10-15 minutes with a slow gait before her foot starts feeling numb. She
> stated this has been her maximum for two years now. Her leg has gotten stronger
> over the last two years. She stated that she has to do a zero gravity leg lift twice a
> day for 15-20 minutes and she has been doing that for the past year and a half.

She has (pain) left arm pain more severe at night than during the day.  She does
not do much with the left hand; she can dress herself, but the shirt she wore to the
hearing, her husband had to help her.  She cannot brush her teeth or brush her hair
with her left arm; her husband helps with those.  She cannot write or use a
computer mouse with her left hand.  She states that she can only lift under 10
pounds.  She can sit for 30 minutes before getting up.

Within the last year she has had problems with panic and anxiety attacks.  She
stated that when she was working at the school she had a total of four panic
attacks at the school.  She currently has panic attacks a couple times a week and
on average they last 10-20 minutes.  She needs help bathing, toileting, and
housekeeping.

She goes to the grocery store once a month.  Somebody usually goes with her and
she usually needs to stop and rest the leg.  She stated that Ms. Feerer has told her
not to walk over 10 minutes, 2-3 times a day; not to pick up anything over 3
pounds with the left arm; she needs to elevate her leg; wear compression
stockings; no carrying purses; no crouching; no bending; no sitting over an hour
without getting up and walking; no stooping; and no crawling.

She sleeps about 4-5 hours of sleep at night.  This affects her memory and
concentration.  During the hearing, she asked for some questions to be asked again
and then noted she does that due to problems with her memory.

(Tr. 17-18).  The ALJ found plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms but then found her statements regarding the intensity and

persistence as well as the limiting effects of these symptoms were not entirely credible.  (Tr. 18).

It is this credibility finding the plaintiff argues is unsupported by substantial evidence.  Plaintiff

argues her activities of daily living are intermittent at best and are completed in spite of the pain

she endures.  (Dkt. 18 at 25).

The credibility finding basically is that the plaintiff is credible unless she claims an

impairment or limitation which is inconsistent with the ALJ's RFC finding in which case she is

not credible.  "[T]he ALJ's unfavorable credibility determination will not be upheld unless the ALJ

weighs the objective medical evidence and assigns articulated reasons for discrediting the

claimant's subjective complaints of pain." *Wilson v. Barnhart*, 129 F. App'x 912, 914 (5th Cir.

2005).  While "[a]n ALJ 'is bound to explain his reasons for rejecting a claimant's [subjective

complaints],' he is not required to 'follow formalistic rules in his articulation.'" *Hernandez v.*

*Astrue*, 278 F. App'x 333, 339 (5th Cir. 2008).  The ALJ, in finding plaintiff to be not entirely

credible, cited references in the record.  For example, the ALJ referenced a May 23, 2012

incident where plaintiff presented to the Pampa Regional Medical Center with diffuse body pain,

diarrhea and vomiting.  (Tr. 18-19 citing Tr. 294- 297).  Although she initially refused testing,

plaintiff acquiesced and it was determined she had nonocclusive thrombi in the superficial

femoral vein, greater saphenous vein, popliteal vein and common femoral vein but no evidence

of left upper extremity DVT.  The ALJ noted plaintiff was discharged May 27, 2012 in good

condition with resolution of all her symptoms except minor left lower extremity pain which was

well controlled with analgesics.  This event, however, was at and around plaintiff's onset date.

Plaintiff's condition at or around her onset date must be considered within the context of her

overall treatment from 2012 to 2014.

　　The ALJ next cited to the August 2012 notation where Nurse Feerer determined plaintiff

could return to work with frequent ambulation *i.e.* walking 6 hours in an 8-hour workday.  While

the ALJ accepted this finding by Nurse Feerer he rejected the other finding of no prolonged

sitting and no lifting with the upper left extremity.  (Tr. 19 citing 634).  The ALJ stated he gave

"little weight" to the no lifting restriction based on plaintiff's representation in other records that

she could do some lifting with the left. As to plaintiff's statement that she was required to elevate

her feet, the ALJ found no mention of this requirement in the record before him.  The ALJ also

referenced portions of the record where plaintiff was found to have mild to no swelling and pain

(Tr. 1051, October 2012), 5/5 strength and normal gait (Tr. 557, 561, February 2014), and that her symptoms were improved with medication (Tr. 482, December 2013).  Again, if Nurse Feerer's findings limiting plaintiff exertionally are unworthy then why are her findings of an ability to work valid.  In any event, these findings need further development.  The ALJ referenced plaintiff's complaints of left hand limitations, specifically the inability to use and grip, but the ALJ found this statement to significantly lack credibility referencing evidence that plaintiff had normal strength in her left limb.  As previously mentioned though, the ALJ did not fully accept the state agency RFC because it did not include manipulative limitations.  The ALJ also found plaintiff could attend speaking engagements for her church, could perform church volunteer work, could independently care for herself, could prepare meals, could do household chores, drive, and shop by phone, computer or in stores.  (Tr. 19).  The hearing testimony by plaintiff, however, was that she could not do household chores (other than light dusting), she could not independently care for herself, could not grocery shop without assistance, and that her church work had gone from 25 hours per week to only two or three hours.  (Tr. 50-52, 56).  The ALJ discusses plaintiff's description of her limitations but notes the medical records repeatedly show normal to only slightly reduced strength.  (Tr. 20).  The ALJ noted the inconsistencies between plaintiff's complaints of memory problems and the lack of such finding in the record. (*Id.*).  The ALJ further noted, as discussed herein, plaintiff's complaints of a history of anxiety and depression to be unsupported by the record.  (*Id.*).  Although the ALJ ultimately stated he did not discount all of plaintiff's complaints, the record shows he did not find any complaints which contradicted her ability to engage in substantial gainful employment to be credible.

The general nature of the credibility assessment in this case makes judicial review

difficult.  The plaintiff ceased substantial gainful activity (library aide) on or about May 23, 2012

when the school year ended.  Her testimony was that she was experiencing problems in 2012 in

her job because of her impairments, but with sick leave and additional leave was able to finish

the year.  It is not clear whether the ALJ found that testimony credible or not credible.  Similarly

it is not clear which of plaintiff's statements regarding her daily activities were found credible

and which were not.  Some claims boil down to a matter of degree, *e.g.*, whether a claimant can

lift 20 pounds, 10 pounds, somewhere in between, or less than 10 pounds.  These claims may be

subject to a more generalized credibility assessment.  Other claims, however, are more direct,

*e.g.*, whether plaintiff can grocery shop independently or with assistance or whether plaintiff can

dress herself and comb her hair by herself or needs her husband's help.  Perhaps the most telling

restriction plaintiff claimed was that she was unable to go to the toilet by herself.  A credibility

assessment as to claims such as this would not need to be generalized.  Either plaintiff is able to

do these things or she is not.  If she is not, the restriction regarding her ability to use the toilet is

the type of restriction in daily living one would not subject themselves to unless it was necessary.

However indelicate an inquiry by the ALJ might have been, this type of restriction should have

been fleshed out by questioning or by securing additional testimony corroborating or not

corroborating plaintiff's testimony.

### *D. The Step Four Determination*

Plaintiff complains the ALJ's Step Four determination was unsupported by substantial

evidence.  Specifically, plaintiff re-urges her prior arguments complaining about the ALJ

findings regarding her severe impairments, her RFC and her credibility.  (Dkt. 18 at 26).  Plaintiff

alleges the ALJ erred when he formulated an RFC without a sit/stand option indicating he relied

on an incomplete hypothetical which did not account for all of plaintiff's physical and mental impairments. Plaintiff points to the VE testimony which precluded past work if the RFC included a sit/stand option. (Tr. 58). Upon remand this issue should be further developed.

### *E. Conclusion*

Adjudication of this case is different in that plaintiff's onset date was originally claimed to be January 1, 2006 but was changed at the administrative hearing to May 23, 2012. The medical records had already been received by the defendant Commissioner and included some records which were no longer of particular relevance except for purposes of plaintiff's history. It is difficult to determine how much consideration was given to plaintiff's records prior to disability onset. Upon remand it should be made clear what records were actually considered.

Additionally, the ALJ found plaintiff's DVT to be a severe impairment. If, as plaintiff claims, clotting in her legs is a problem which cannot be addressed solely with coumadin, and requires elevation of her leg during the day, whether frequently at a lesser elevation or twice a day over her head, remand is necessary to clarify whether the DVT and clotting requires such accommodation or whether the elevation of the leg is merely to relieve pain. If it is for the purpose of minimizing the possibility of clots forming which could lead to serious complications, it should be determined whether that restriction was done by Nurse Feerer alone or by Dr. Adams and why. If necessary, a consultative examination could also be ordered.

In the final analysis plaintiff has shown further development of the plaintiff's treatment and of her condition at the administrative level is necessary before this case can be said to have been fully considered.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff KIMBERLY FUTRELL not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for further administrative review consistent with this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____16th_____ day of March 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the

Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).